UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Travelers Property Casualty Co. of America and Greg Paine,<br><br>　　　　　　　　　　Plaintiffs,<br>v.<br><br>General Casualty Insurance Company d/b/a Regent Insurance Company,<br><br>　　　　　　　　　　Defendant. | AMENDED MEMORANDUM AND ORDER<br><br>Civil No. 04-3359 (MJD/JGL) |

Michelle D. Mitchell, Bethany K. Culp, and Duana J. Grage, Hinshaw & Culbertson LLP, Counsel for Plaintiffs.

Michael R. Quinlivan, Cronan Pearson Quinlivan P.A., Counsel for Defendant.

## I.    INTRODUCTION

This is a declaratory judgment action to determine a golf pro's insurance coverage for a student's injuries during a school's golf class. The underlying suit regarding the injury itself is currently pending in a separate matter, <u>Lillian Wu v. Shattuck-St. Mary's School</u>, Case No. 03-4870 (DWF/JSM) ("<u>Wu</u>"). The parties in this case are Plaintiff Greg Paine, the golf pro at issue; Plaintiff Travelers Property Casualty Company of America ("Travelers"), Paine's insurer under a general liability policy with the Professional Golfers' Association of America ("PGA"); and Defendant General Casualty Insurance Company d/b/a Regent Insurance Company ("Regent"), the insurer for Paine's employer Legacy Golf Corporation ("Legacy").

The primary dispute in this matter is whether Paine is insured through the PGA (with Travelers), or through his golf-course employer (with Regent). Regent has filed a Motion for Summary Judgment [Docket No. 16] for dismissal of Plaintiffs' claims, and Plaintiffs have filed a cross-motion for Partial Summary Judgment [Docket No. 26]. This matter was heard by the Court on June 1, 2005.

## II.   FACTUAL BACKGROUND

The facts in this case are largely undisputed. On January 17, 2003, in the gymnasium of Shattuck-St. Mary's School ("Shattuck") in Fairbault, Minnesota, student Lillian Wu was struck in the head by a golf ball while Paine was teaching a physical education class on golf. Shattuck is a preparatory boarding and day school that enrolls students in grades 6-12. Paine also works for Legacy, where he is the Head Golf Professional, which consists of acting as the summer golf pro and manager of the golf shop. Shattuck is Legacy's sole shareholder, and the two organizations are located on adjacent properties.

Shattuck Headmaster Dennis Brown hired Paine to teach Shattuck's students golf for credit during the school day in the winter of 2002-03. Paine negotiated directly with Headmaster Brown, reported directly to Brown, and was paid $1,500 at the conclusion of the semester. As part of his employment with Shattuck, Paine worked with Brown and Shattuck Athletic Director John Sommer in designing Shattuck's indoor golfing facility in the basement of its gymnasium.

Paine is a member of the PGA and has a membership classification of A-1, which means that he is a head golf professional at a green-grass facility. Through his association with the PGA, Paine obtained insurance through Travelers, which issued a Commercial Insurance Policy to "The Members & Apprentices of the Professional Golfers Assoc. of America" as the named insured, thereby including Paine as a named insured. The Travelers policy provided Paine with both general liability insurance and excess liability insurance.

During the winter months, Paine's only duties at Legacy related to management of Legacy's golf shop; Paine's teaching at Shattuck was an independent endeavor over and above his employment by Legacy. One element of Paine's duties with Legacy is providing golf lessons to the public. Legacy allows Paine to keep all of the revenue received from those lessons. Paine has not, at any time, shared his teaching income with Legacy, including the $1,500 he received from Shattuck. Further, Legacy is not a party to Wu, and that suit contained no allegation that Paine was acting as a Legacy employee during the incident at issue.

Regent issued Legacy a Comprehensive Insurance Policy, which provided comprehensive general liability coverage as well as umbrella liability coverage. The Regent Policy's "Commercial General Liability Coverage Form" states in its "Who Is An Insured" section that those covered under the policy included Legacy's "employees . . . but only for acts within the scope of their employment by

[Legacy] or while performing duties related to the conduct of [Legacy's] business." The Regent Policy's "Golfmaster General Liability Coverage Endorsement" also included a "Who Is An Insured" section that stated as follows:

> G. ADDITIONAL INSURED – TENNIS OR GOLF PROFESSIONALS
>
> 1. **Section II – WHO IS AN INSURED** is amended to include as an insured any person(s), other than your "employees", while acting as your tennis or golf professional.
>
> 2. Insurance provided by **G.1.** above applies to "bodily injury", "property damage", or "personal or advertising injury" arising out of professional services as a tennis or golf professional.

On August 8, 2003, a suit was commenced on behalf of Lillian Wu in <u>Lilian Wu, et al. v. Shattuck-St. Mary's School</u>, Case No. 03-4870 (DWF/JSM). The Amended Complaint in that case claimed (1) that Paine acted as an agent of Shattuck, subject to Shattuck's control, and for whom Shattuck is thereby vicariously liable and (2) that, at the time of Wu's injury, the golf class was a joint enterprise between Shattuck and Paine. Shattuck and Paine were the only two defendants in the <u>Wu</u> case; Regent was never a named defendant.

III.   DISCUSSION

The parties have filed cross-motions for summary judgment relating to coverage for the injury. Regent moves for summary judgment, asserting that (1) it has no duty to defend Paine because the Complaint in <u>Wu</u> does not state a claim

4

against its insured (Legacy) or any employees acting on the insured's behalf; (2) Travelers' policy insuring Paine as the named insured is primary to Regent's employee-liability coverage; and (3) Shattuck's insurer, American Employers' Insurance Company is primary to Regent for Paine's actions as Shattuck's employee or agent.

Plaintiffs move for partial summary judgment, arguing that (1) Regent has a duty to defend Paine in the underlying suit because those claims arguably fall within the coverage afforded to Paine by Regency and (2) Regent's policy is primary to the coverage provided by Travelers' policy.

### A. Summary Judgment Standard

When considering motions for summary judgment, a court must determine "whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Palesch v. Mo. Comm'n on Human Rights, 233 F.3d 560, 565 (8th Cir. 2000); see Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that there is no disputed issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

For these purposes, "[t]he non-moving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record," though "[t]he non-moving party may not merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing

that there is a genuine issue for trial." Palesch, 233 F.3d at 565-66 (citations omitted). Accordingly, a "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." Naucke v. City of Park Hills, 284 F.3d 923, 927 (8th Cir. 2002). Further, a nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts and where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Kiemele v . Soo Line R. Co., 93 F.3d 472, 474 (8th Cir. 1996) (quotation omitted).

    B.    Analysis

        1.    Regent's Duty to Defend Paine, as a Legacy Employee

Regent contends that because it insures Legacy and its employees, and because Paine's instruction of Shattuck students was not related to his employment with Legacy, Regent has no duty to defend Paine. Determination of the duty to defend requires comparison of a complaint's allegations to the relevant insurance policy language. Jostens, Inc. v. Mission Ins. Co., 387 N.W.2d 161, 166 (Minn. 1986); see Meadowbrook, Inc. v. Tower Ins. Co., 559 N.W.2d 411, 420 (Minn. 1997) (noting that court must focus on claim in assessing whether insurer has duty to defend). A duty to defend exists "when any part of the claims is arguably within the scope of the policy." Jostens, 387 N.W.2d 165-66. But unless a Complaint "alleges facts within the coverage of the policies, the insurer has no

duty to defend." St. Paul Mercury Ins. Co. v. Dahlberg, 596 N.W.2d 674, 676 (Minn. Ct. App. 1999) (citation omitted).

        (a)    Wu Amended Complaint and Regent's Policy Coverage.

Regent's policy states that it "will pay those sums that the insured becomes legally obligated to pay . . . to which this insurance applies" but that Regent "will have no duty to defend the insured against any 'suit' . . . to which this insurance does not apply." Additionally, Regent's policy covers Legacy employees "but only for acts within the scope of their employment by [Legacy] or while performing duties related to the conduct of [Legacy's] business."

Regent argues that Paine does not qualify as an insured under Regent's "Golfmaster General Liability Coverage Endorsement" because Wu's Amended Complaint makes no allegation that Paine was acting as Legacy's tennis or golf professional at the time of injury. The Wu case has never included Legacy as a defendant; rather, the underlying claims were mounted against Paine and Shattuck because they involved Shattuck students on Shattuck's premises and under Shattuck's supervision. Further, it is undisputed that Shattuck controlled Paine's employment status for the class, as well as controlling the class's equipment, facility design, and safety rules and procedures.

### (b) Extrinsic Evidence

The record also contains extrinsic evidence that demonstrating that, for this injury, Paine cannot be considered an insured under Regent's policy. If a complaint fails to establish coverage, an insurer still must accept tender of defense if it has independent knowledge of facts that may establish coverage. <u>Garvis v. Employers Mut. Cas. Co.</u>, 497 N.W.2d 254, 258 (Minn. 1993). But if an insured fails to meet its burden of presenting a covered claim through a complaint or extrinsic evidence, an insurer need not speculate about facts that may trigger its duty to defend. <u>See id.</u> (holding that insurer was not required to participate in discovery because complaint's facts did not notify insurer of covered claim).

Paine's own deposition testimony in <u>Wu</u> demonstrates that he was not acting as Legacy's agent when he taught Shattuck's students—noting instead that Paine was hired by Shattuck to teach the class, reported to Shattuck, designed the facility with Shattuck employees, was paid by Shattuck, and did not provide Legacy with any income from his teaching.

Further, Legacy's employment agreement is silent as to Paine's teaching at Shattuck, giving Legacy no right to control those activities. The employment agreement merely requires Paine to manage "the operation of the clubhouse . . . and anything else involved with running a golf operation," to "improve a customer database to enhance budgetary and marketing opportunities," and to "improve [his] image as a Pro and the Legacy's image as a whole with [Legacy's]

customers and community." It makes no mention or requirement that Paine teach at Shattuck.

Under Minnesota law, Paine's teaching at Shattuck was not sufficiently related to his employment at Legacy to constitute an activity that furthered Legacy's interests. See Hentges v. Thomford, 569 N.W.2d 424 (Minn. Ct. App. 1997). Hentges involved a widow's suit against her parish church when her pastor accidentally shot and killed her husband on a hunting trip, and it involved claims that the pastor was acting in his capacity as an employee because the pastor was "on call," and because such hunting trips with parishioners benefited the church. Id. at 426-27. The Minnesota Court of Appeals rejected this argument, holding that—as a matter of law—the hunting outing "did not have the planned purpose of furthering pastoral-parishioner relationships," and that

> where the act of hunting occurred *off church property* on [the pastor's] *day off*, was *not sponsored* by the church, and was *outside the church's physical* and spiritual influence, the *residual benefit* of fostering ongoing pastoral-parishioner relationships *is too tenuous* in its connection to [the pastor's] employment to support a determination that he was acting within its scope.

Id. at 429 (emphasis added). The Hentges court went on to hold the following:

> The justification for holding an employer liable for the torts of employees is that the employer can and should consider the liability as part of the full endeavor and a cost of doing business. But the *employer's responsibility for the overall endeavor is not carried "to the point where an employer is absolutely liable for every tortious act of his employees*." When the connection between the activity

9

> and the employer's interest is as marginal as established on these facts, the rationale for the doctrine does not support the extension of the employer's liability; the doctrine of vicarious liability does not transform an employer into a comprehensive insurer.

Id. (emphasis added; citations and quotations omitted).

Plaintiffs attempt to distinguish Hentges by citing a Minnesota cases that held, 20 years earlier than Hentges, that "[i]f any part of the cause of action against the insured arguably falls within the scope of coverage, the insurer must defend." Inland Constr. Corp. v. Continental Cas. Co., 258 N.W.2d 881, 884 (Minn. 1977) (citation omitted); see Prahm v. Rupp Constr. Co., 277 N.W.2d 389, 390 (Minn. 1979) (holding that an obligation to defend arises unless claim is clearly outside of coverage). The Court is aware that in determining whether a duty to defend is present, it "must give the benefit of the doubt to the insured" and such a duty to defend arises "unless the pleadings and facts clearly establish that the claim falls outside the policy terms." John Deere Ins. Co. v. Shamrock Indus., Inc., 929 F.2d 413, 418 (8th Cir. 1991).

However, Plaintiffs have provided no authority to weaken Defendant's interpretation of Hentges, which clearly establishes that the underlying claim falls outside of the terms of Regent's policy as a matter of law. The instant facts are clearly analogous to those in Hentges, demonstrating that Paine's actions—though they may have tangentially benefited Legacy's image in the community—are simply too remote to be covered by Legacy's policy.

10

Plaintiffs attempt to create a link by pointing to extrinsic evidence that Legacy provides golf lessons to the public to induce people to use the course, so Paine's teaching the Shattuck students provided some residual benefit to Legacy. But it remains undisputed that the class at issue was not held on the Legacy course but instead took place on Shattuck's premises not in the spring or summer, but in the middle of a Minnesota winter. Merely because some of the students may eventually use Legacy's course does not provide the requisite benefit to trigger Legacy's policy coverage through Regent.

Legacy benefits from Paine's class at Shattuck no more than a local university might benefit from a high school course that could result in increased university enrollment. The two are related, and one may provide peripheral benefits the other, but the connection is too weak to demonstrate that an instructor employed at both would act within the scope of his employment at one institution while teaching at the other. And merely because a job description at the university includes instructing students, this clearly does not mean that an instructor continues to be employed with the university while teaching high school students on the high school's campus—and while being paid and supervised by the high school. Such reasoning would stretch the principle of employment to its breaking point.

Further, any tangential benefits to Legacy are no greater than those to the church in Hentges, where the undisputed facts demonstrated that the hunting trip

"did not have the planned purpose of furthering pastoral-parishioner relationships," Hentges, 569 N.W.2d at 429. Similarly, although Paine has stated that part of his duties at Legacy included providing lessons to the public, the record contains no evidence that the planned purpose of his teaching at Shattuck was furthering Legacy's business interests. Rather, the undisputed facts here demonstrate that Shattuck alone paid Paine, and Legacy's terms of employment explicitly permitted Paine to keep all of those funds. Any argument that Paine entered into a private contract with Shattuck for the planned purpose of furthering Legacy's interests, even though Paine keeps 100% of the payment, is unsupported by the record.

Just as the Minnesota Court of Appeals placed great import on the Hentges trip's occurring off church property, on the minister's day off, outside the church's physical and spiritual influence, and without church sponsorship, the facts here similarly meet every one of those factors. The Shattuck class and resultant injury occurred off Legacy's property, on Paine's free time, outside of Legacy's influence, and without Legacy's sponsorship. Like in Hentges, where any church benefits from the minister's participation in social and recreational events were indirect and nonspecific, any benefit to Legacy from Paine's teaching students at Shattuck was similarly indirect and nonspecific.

As a matter of law, like in Hentges, any "residual benefit" to Legacy is too tenuous and marginal to be considered within the scope of Paine's employment

with Legacy. As such, the underlying claims in <u>Wu</u> fall outside Legacy's policy terms, and Regent bears no duty to defend Paine.

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment [Docket No. 16] is **GRANTED**, and

2. Plaintiffs' Motion for Partial Summary Judgment [Docket No. 26] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  ___August 12, 2005____            ___s/Michael J. Davis_____
                                          Judge Michael J. Davis
                                          United States District Court

13